UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

GWYN R. HARTMAN REVOCABLE LIVING
TRUST U/A/D 11/16/93,

    Plaintiff,

v

SOUTHERN MICHIGAN BANCORP, Inc., a Michigan
corporation, and JOHN H. CASTLE, an
individual,

    Defendants.

Case No.

Hon.

---

R. Christopher Cataldo (P39353)
Jaffe, Raitt, Heuer & Weiss, PC
Attorneys for Plaintiff
27777 Franklin Rd., Ste. 2500
Southfield, MI 48034
(248) 351-3000
ccataldo@jaffelaw.com

---

## COMPLAINT

Plaintiff Gwyn R. Hartman Revocable Living Trust, U/A/D 11/16/93, through her undersigned counsel, complains against the Defendants as follows:

### The Parties

1.    Gwyn R. Hartman is the trustee of the Gwyn R. Hartman Revocable Living Trust (the "Trust") and is a resident and citizen of the state of Florida. Plaintiff Trust is therefore a citizen of the state of Florida for purposes of 28 USC §1332. The Trust has filed this action to complain about and seek redress for an illegal, fraudulent and oppressive plan and scheme to destroy the rights of the Plaintiff by effectively disenfranchising its shareholders through the deliberate corruption and manipulation of

2545437

its proxy solicitation process for the personal benefit of the directors as explained further below.

2. Defendant Southern Michigan Bancorp, Inc. ("SMB") is a Michigan corporation with its principal place of business located in Coldwater, Michigan. SMB is a bank holding company. Defendant SMB is a citizen of the state of Michigan for purposes of 28 USC §1332.

3. Defendant John Castle ("Castle") is the CEO and Chairman of the Board of SMB. Castle is a resident and citizen of the state of Michigan for purposes of 28 USC §1332.

4. The amount or value in controversy exceeds $75,000 exclusive of interest and costs.

5. This Court has jurisdiction pursuant to 28 USC §1332(a)(1) as the matter in controversy is between citizens of different states and the amount or value in controversy exceeds $75,000, exclusive of interest and costs. Venue in this Court is proper pursuant to 28 USC §1391.

6. Plaintiff Trust is one of the largest individual shareholders of SMB, holding 150,041 shares of voting common stock at all times relevant to this complaint.

7. Castle's position as CEO and Chairman of SMB gives him effective and actual control over the board of directors of SMB as well as all operations of SMB.

**The Events Giving Rise to This Case.**

8. In connection with the annual meeting of the shareholders of SMB scheduled for May 9, 2013, the Trust timely submitted a valid shareholder proposal for inclusion in the proxy materials in accord with the SMB bylaws. By submission dated

2545437

November 21, 2012, the Trust requested that the following proposal and supporting statement (the "Proposal") be included in the proxy materials for the May 9, 2013 meeting of shareholders:

### SHAREHOLDER PROPOSAL ON DIRECTOR LIABILITY

**RESOLVED**: That the shareholders of Southern Michigan Bancorp, Inc. ("**SMB**") urge the Board of Directors to take all steps necessary to amend SMB's Amended and Restated Bylaws to provide that if a director of SMB is found liable to SMB or its stockholders, for any claim, issue or matter involving a breach of fiduciary duty or other improper conduct, to the extent permitted by applicable law and SMB's articles of incorporation, in addition to any monetary damages or other relief which may be awarded, at law or in equity, such director shall be required to return to SMB any and all fees received from SMB during each of the preceding five fiscal years, and such director shall forfeit the right to receive future fees and other remuneration from SMB of any kind.

### SUPPORTING STATEMENT

The goal of this proposal is to strengthen the oversight function of the Board and create an additional deterrent to discourage directors from acting improperly in the conduct of their duties as corporate stewards of SMB. The change urged by the proposal would create a specific remedy for SMB in the event a director is found liable to SMB or its stockholders for violating his or her fiduciary duties, or otherwise acting improperly, to the extent such remedy does not contravene any applicable laws or SMB's articles of incorporation. This change is intended to encourage our directors to demand the support and information necessary to enable them to meet the important responsibilities of their office. It is also intended to prevent directors from retaining a certain amount of fees awarded to them by SMB when they have been found liable for misconduct.

We recognize that SMB must be able to attract quality directors. We believe that in the event a director is found liable to SMB or its stockholders, requiring such director to return fees he or she was awarded for a certain period of time strikes the appropriate balance between the need to attract quality directors and the need to promote director accountability. Further, we believe that such a change would increase director accountability to stockholders who elect them, improve the corporate decision-making processes, and consequently improve long-term corporate value.

Please vote **YES** on this proposal.

2545437

9. Although the Proposal was in the best interest of SMB and its shareholders, it was opposed by Castle and the other members of the board under his control because it was contrary to Castle's personal interests by subjecting him, and the other board members under his control, to additional oversight and by requiring more stringent efforts by Castle and the other board members to act in the best interests of SMB and its shareholders by imposing penalties on them for misconduct.

10. Acting in accord to further his own personal interest and contrary to the best interests of SMB and its shareholders, including the Trust, Defendant Castle embarked upon a plan and scheme (potentially aided and abetted by other SMB officers and/or members of the SMB board to be identified through discovery) to manipulate the proxy solicitation process to deny the Trust the ability to solicit votes to support the Proposal while at the same time using the proxy process to solicit votes against the Proposal from uninformed shareholders.

11. An important component of this plan and scheme was Castle's knowledge that virtually all shareholders of SMB who vote do so by proxy rather than at the meeting of the shareholders, making it imperative that the Trust be able to include the substance of the Proposal and the supporting statement in the proxy materials which are the only effective means to inform the shareholders about these important issues.

12. A shareholder's ability to include proposals and supporting statements in the proxy materials is an important right as it serves as one of the few ways that shareholders can effectively communicate their concerns to the board and to other shareholders.

13. As a direct and proximate result of Castle's plan and scheme, Castle caused SMB to submit a proxy statement in advance of its annual meeting to its shareholders which stated only that a shareholder had submitted a proposal to SMB without including the Proposal, the supporting statement, or even an explanation or summary of their terms, or any other information regarding the Proposal which would allow an informed vote by the shareholders. The proxy materials further stated that the SMB board urged the shareholders to vote against the unidentified proposal and that, unless requested otherwise, proxies submitted to SMB would be voted against the unidentified proposal under the discretionary authority granted by the form of proxy. The proxy materials did not give the shareholders the ability to vote in favor of the Proposal or provide them with any ability to learn what it was. Through this device, Castle was able to manipulate the proxy process and thereby arrange for sufficient votes against the Proposal in advance of the shareholder meeting while denying the Trust any meaningful opportunity to solicit support for its Proposal by allowing the shareholders the ability to make an informed decision. That is, Castle knew that few, if any, shareholders would vote in favor of any proposal if they did not know what it was, and therefore he ensured the defeat of the Trust's Proposal by not including any information about the Proposal in the proxy materials. At the same time, Castle included a mechanism whereby the proxy granted the board/management under his control discretion to vote against the Proposal upon its submission by the shareholder absent a specific directive in favor of the unidentified Proposal which was not requested or even mentioned.

2545437

14. At the May 9, 2013 shareholder meeting, Castle's plan and scheme to manipulate the proxy process to protect his (and that of the other board members') personal interest worked exactly as Castle planned. The Trust was the only shareholder to vote at the meeting and it voted its 150,041 shares in favor of the Proposal. The minutes of the meeting reflect that approximately 336,000 shares voted against the Proposal by proxy with specific instruction to vote against the Proposal. On information and belief, all or most of the 336,000 shares who voted expressly against the Proposal were voted by shareholders who were also directors and had a personal interest in its defeat. In addition, the meeting minutes reflect that approximately 1.4 million shares of common stock were voted against the proposal under the default mechanism giving Castle/SMB the right to vote against the Proposal merely by submission of the proxy with no specific direction.

15. Other than Castle and other SMB insiders such as the members of the SMB board, none of the shareholders who voted against the Proposal (by specific instruction or by the form of proxy) knew the substance of the Proposal or the reasons why it should be adopted at the time the proxies were submitted.

16. As part of Castle's plan and scheme to manipulate the Proxy process, he sought to create the appearance of fairness by giving the Trust the opportunity to present the Proposal at the May 9, 2013 shareholder meeting. However, Castle knew that few, if any shareholders actually attend or vote at the meeting and that virtually all shareholders vote by proxy in advance of the meeting, such that the presentation of the Proposal at the shareholder meeting itself was a futile act as Castle had already

secured the votes against the Proposal prior to the shareholder meeting through his manipulation of the proxy process as explained above.

17. The plan and scheme described above also violates SMB's bylaws which require the compliance with federal securities laws. That is, the plan and scheme described above violates federal securities laws and therefore violates the SMB bylaws which require compliance therewith.

18. As a result of the acts of Castle as referenced above, and possibly those of others to be determined through discovery, the Trust and SMB have each been damaged by an amount in excess of $75,000 exclusive of interest and costs, and the economic value of the rights that the Trust seeks to protect through this suit exceeds $75,000 exclusive of interest and costs. For example, the value of the Trust's holdings in SMB is well over $2.5 million, but this amount is now in jeopardy and/or has been negatively impacted by an amount in excess of $75,000 exclusive of interest and costs given the deliberate plan by Castle and the others to evade oversight of the board and subvert the ability of shareholders to submit proposals to the shareholders through the deliberate manipulation of the proxy process. In addition, the enforcement of the fiduciary duties owed by Castle, and maintenance of the integrity of the proxy solicitation process to ensure a fully informed vote have economic values well in excess of $75,000 exclusive of interest and costs, particularly because the proxy solicitation process is the only means through which the shareholders can effectively present their views to management at the annual meeting of shareholders and/or other shareholders. Protecting the rights of the Trust and the other shareholders by imposing additional

oversight on the board of directors also has economic value in excess of $75,000 exclusive of interest and costs.

## Count I

19. Paragraphs 1 through 18 are incorporated by reference.

20. As an officer and director of SMB, Castle owed the Trust fiduciary duties, including but not limited to those duties imposed by the Michigan Business Corporations Act, including MCL 450.1541, and by common law, including but not limited to the duty of loyalty, the duty to act in good faith, the duty of fairness, and the duty of due care.

21. The fiduciary duties imposed upon Castle include, but are not limited to, the duty to disclose to the shareholders all material information when soliciting votes by proxy and other actions necessary to ensure a fully informed vote. The fiduciary duties imposed upon Castle also include, but are not limited to, the duty to use the proxy solicitation process for the best interests of SMB and not as a mechanism to block legitimate shareholder proposals from obtaining support to thereby protect the personal interests of Castle and the other directors.

22. In connection with the proxy materials used to solicit votes for the May 9, 2013 meeting of the shareholders of SMB, Castle orchestrated a plan and scheme to obtain votes against the Proposal of the Trust while at the same time denying the Trust the ability to solicit meaningful support for the Proposal through the proxy materials. As described in greater detail above, the plan and scheme included the solicitation of votes against the Proposal through the proxy process while at the same time intentionally withholding material information from the shareholders regarding their vote—including

the substance of the Proposal and the supporting statement. As a result, the plan and scheme negated a fully informed vote on the Proposal, which was its intention.

23. Castle has violated his fiduciary duties to the Trust through the conduct described above, including but not limited to the intentional withholding of material information from the shareholders through the solicitation of votes against the Proposal through the proxy materials and denying the Trust any meaningful opportunity to solicit votes for the Proposal through the proxy materials, and otherwise acting to preclude a fully informed vote.

24. Castle's plan and scheme to violate his fiduciary duties to the Trust and SMB was undertaken to preclude a fully informed vote to thereby protect his personal interest in defeating the Proposal to thereby limit the oversight and scrutiny to which he and the other directors could be subjected in the performance of their duties on SMB's behalf should the Proposal pass.

25. An actual case or controversy exists between the parties regarding the legitimacy of the actions undertaken by Castle in connection with the May 9, 2013 shareholder meeting and the solicitation of votes by proxy materials as explained above in connection with that meeting. This Court is fully authorized to declare the rights of the parties and to issue the appropriate declaratory judgment, injunctive and other relief, including money damages and the award of costs and attorney fees, and take such other action and grant such other relief as is appropriate to protect the rights of the Trust.

26. The relief that this Court is authorized to grant includes, without limitation, a declaratory judgment: i) finding that Castle has violated his fiduciary duties; and ii)

finding the proxy materials used to solicit votes for the May 9, 2013 meeting of the shareholders to be illegal, fraudulent, oppressive, and otherwise materially misleading and otherwise invalid; iii) finding the vote taken at the May 9, 2013 shareholder meeting to be invalid; iv) directing Castle and SMB to advise all shareholders of the findings of this Court regarding his breach of fiduciary duty and directing them to submit the Proposal for a vote of the shareholders with all material information included in the new proxy materials; and v) granting such other relief to which the Trust is entitled.

## Count II

27. Paragraphs 1 through 26 are incorporated by reference.

28. By letter dated April 16, 2013, the Trust made a demand on SMB to correct the proxy materials by including the substance of the Proposal and supporting statement in the proxy itself, but that request was flatly rejected. To the extent that any additional demand is needed as a prerequisite to suit, that request would be futile as Castle controls the SMB board which would never authorize suit against Castle.

29. The Trust has been a shareholder of SMB at all relevant times and fairly and adequately represents the interests of SMB and all of its shareholders.

30. Castle has violated his fiduciary duties to SMB through the conduct described above, including but not limited to the duty to make full and fair disclosure of all material information to the shareholders in the company proxy materials being utilized to solicit votes against the Proposal to thereby preclude a fully informed vote.

31. The Trust has standing to assert SMB's rights against Castle through this derivative claim set forth in Count II, and to seek and obtain relief necessary to protect the rights of SMB and its shareholders by enforcing Castle's fiduciary duties and by

2545437

protecting the integrity of the proxy solicitation process and otherwise acting to ensure a fully informed vote.

32. On behalf of SMB, the Trust is entitled to any and all relief available at law or in equity to remedy the misconduct described above, including but not limited to declaratory and other relief consistent with that described in paragraph 26 above.

WHEREFORE, the Trust requests the following relief:

A) A declaratory judgment pursuant to Federal Rule of Civil Procedure 57 or as otherwise available at law, consistent with paragraph 26 above; and

B) An award of money damages against Castle and/or SMB based upon his violation of fiduciary duties; and

C) An award of actual costs and attorney fees in favor of the Trust for conferring a substantial benefit upon SMB by protecting its rights through this proceeding; and

D) Such other relief as may be available to the Trust, at law or in equity, as determined by this Court.

Respectfully Submitted,

s/ R. Christopher Cataldo
R. Christopher Cataldo (P39353)
Jaffe, Raitt, Heuer & Weiss, PC
Attorneys for Plaintiff
27777 Franklin Rd., Ste. 2500
Southfield, MI 48034
Dated: July 31, 2013
(248) 351-3000
ccataldo@jaffelaw.com

2545437